IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SIEGFRIED LEWIS**                                                                                                       **PLAINTIFF**

v.                                        **CASE NO. 4:18-CV-00510-JWB**

**ARKANSAS STATE POLICE**                                                             **DEFENDANT**

## TRIAL BRIEF

The Arkansas State Police ("ASP") did not discriminate against Plaintiff, Siegfried Lewis ("Lewis"), on the basis of race when it transferred him from his patrol sergeant post to a desk sergeant post. ASP had legitimate, nondiscriminatory reasons for reassigning Lewis to the desk sergeant position. Lewis will be unable to establish that the circumstances give rise to an inference of discrimination because he cannot show that any similarly situated white sergeant was treated differently than him. The evidence at trial will show that Lewis was transferred due to longstanding performance issues. Additionally, based on the Court's prior rulings, written discovery, and depositions, Plaintiff is precluded from putting on any evidence of economic damages.

### INTRODUCTION

The Plaintiff, Siegfried Lewis, filed his amended complaint on October 10, 2018, alleging that the Arkansas State Police (ASP) discriminated against him on the basis of race in violation of Title VII and the Arkansas Civil Rights Act. After ASP filed a motion for summary judgment September 2019, the Court ruled that only one of his claims had a genuine dispute of material fact—his Title VII race discrimination claim based on his placement on a CAP in June 2017. All other claims were dismissed. No retaliation, failure to promote, generally hostile work environment, or any other Title VII claims relating to Lewis's employment with ASP are before this Court.

The Court has already excluded a number of things. In its order ruling on Defendant's motion in limine, the Court excluded: (1) the testimony and opinions of Lewis's damages expert, Barry Grant, (2) exhibits relied on by Grant that were not disclosed in discovery, (3) the testimony of Dr. Wynona Bryant-Williams, (4) any hearsay testimony from Keith Eremea, (5) the testimony of Hayse Miller, Kramellah Banks, and Tafarra Haney, and (6) expert testimony. (DE 88-1, at pp. 14-15). In its order ruling on Defendant's oral motion to exclude, the Court excluded any evidence related to Lewis's alleged loss of the opportunity to accrue overtime hours. (DE 102, at p. 17).

**FACTUAL BACKGROUND**

Towards the beginning of 2015, Jeff Sheeler, who is white, was promoted to the rank of lieutenant and placed in the chain of command at Troop A, headquartered in Little Rock, Arkansas. Lewis, who is black, was already working in Troop A as a highway patrol sergeant under Lt. Darran Austin, but when Lt. Sheeler arrived, he became Lewis's direct supervisor, along with three other sergeants.

However, the dispute at the center of this claim arose in June 2017. After a steady decline in his supervisory performance and two to three years' worth of efforts by Lt. Austin and Lt. Sheeler to get him to improve, Lewis was placed on a corrective action plan ("CAP") meant to address that decline. As a result of the CAP, Lewis was subsequently transferred from a sergeant position in highway patrol to a sergeant position at the ASP Troop A headquarters where he worked, 9 a.m. to 5 p.m., Monday through Friday, interacting with the public. His annual pay was neither raised nor lowered as a direct result of the transfer, and his rank did not change.

Lt. Austin and Lt. Sheeler documented Lewis's steady decline in performance evaluations, emails, and memos dating back to 2014. Lt. Sheeler prepared one Memorandum in particular, dated March 2, 2016, regarding "Meeting Review/performance," in which he states, in part, that "Sgt.

Lewis has had continued performance issues with at least one particular employee who is performing at the bottom of the entire troop. His performance is so low it 'shocks the conscience' given the number of hours he works in the patrol function. To this point, Sgt. Lewis has not effectively addressed this issue despite my encouragement to do so during 2015 at the outset of my lieutenant duties."

And Lewis's performance evaluations corroborate the issues documented in emails and memos. In Lewis's 2016 performance evaluation, Lt. Sheeler wrote, in part, in the section regarding supervision, "[Lewis] can improve in this rating area by applying his managerial skills more effectively in regards to low-performing employees." But in the following year, Lewis did not improve. Lt. Sheeler observed, in part, in the supervision section on his 2017 performance evaluation, "[Lewis] should be able to handle any performance issue without the need for input from his supervisor. He should be able to confront low performing troopers effectively but does not." From 2016 to 2017, Lewis's rating in the supervision section and his rating overall declined.

Because Lewis's performance issues had not improved, Lt. Sheeler issued Lewis a "Letter of Warning – Job Performance/Insubordination" dated June 1, 2017. The Letter of Warning states, in part, "In documentation dating back to at least 2014 you have been counseled either via email communications or face-to-face meetings with your supervisors about routine paperwork not being correct, routine paperwork that is consistently late and in some cases assignments that are not done as instructed or require constant prompting to get you to complete them. Your supervisory rating has declined on your yearly evaluation as a result of this and other issues relating to your subordinates not performing to minimum expectations and your lack of involvement in those issues to gain positive long-term results."

In conjunction with the Letter of Warning, Lewis was placed on a CAP pursuant to a form dated June 2, 2017, which states, in part, under the "Reason for Action Taken": "Continued supervisory issues specifically relating to late paperwork, inadequate analysis of critical incidents on supervisor memorandums, lack of effort regarding low performing employees and actions that are considered [in]subordinate in nature." The CAP resulted in Lewis being temporarily reassigned to a desk sergeant position in June 2017. Though he did not continue to supervise highway troopers, Lewis maintained supervisory responsibilities and authority as a sergeant when he was reassigned to the desk sergeant position.

The evidence at trial will demonstrate that ASP did not discriminate against Lewis based on his race or for any other reason. Lewis's placement on a corrective action plan was based on legitimate, nondiscriminatory reasons, including, but not limited to, Lewis's failure to properly supervise his subordinates, issues relating to late paperwork, and insubordination.

## ASP D<small>ID</small> N<small>OT</small> D<small>ISCRIMINATE</small> A<small>GAINST</small> L<small>EWIS</small>

A claim of racial discrimination under Title VII can be established by a plaintiff using direct or indirect evidence. *Twiggs v. Selig*, 679 F.3d 990, 993 (8th Cir. 2012). "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (internal citations and quotations omitted). In *Griffith v. City of Des Moines*, the Eighth Circuit explained that direct evidence requires "strong evidence" that "clearly points to the presence of an illegal motive." 387 F.3d 733, 736 (8th Cir. 2004).

Absent direct evidence of discrimination, claims of discrimination are properly analyzed under the burden shifting framework of the *McDonnell Douglas*[1] analysis. *Torgerson*, 643 F.3d at 1044. Under the first step of the *McDonnell Douglas* analysis, a plaintiff has the burden of showing a prima facie case of discrimination, which creates a rebuttable presumption of discrimination. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). If successful, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is able to prove such a reason, then the burden shifts back to the plaintiff to prove that the employer's reason was merely pretext for discrimination. *Lake*, 596 F.3d at 873-74.

To state a claim for racial discrimination, an employee must first establish a prima facie case by showing that "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). The fourth element can be proven by showing that similarly situated employees were treated differently. *Lake*, 596 F.3d at 874; *Twiggs*, 679 F.3d at 993.

Lewis is unable to present a prima facie case of racial discrimination. He cannot present any direct evidence of racial discrimination, and his claim fails under the burden-shifting framework of the *McDonnell Douglas* analysis. Of the four elements required to show discrimination, Lewis is unable to satisfy the second, third, or fourth.

As to the adverse-employment-action element, an employee suffers an adverse employment action when there is a "tangible change in duties or working conditions" constituting "a material employment disadvantage." *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003)

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

(internal quotations omitted). "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no significant disadvantage, do not rise to the level of an adverse employment action." *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (internal quotations omitted). Here, Lewis's pay did not change. His rank did not change. His future career prospects did not change. He was not terminated. He was not relocated to a different Troop. The only change Lewis points to is that he no longer regularly supervised highway troopers while on reassignment. Nevertheless, he continued to maintain supervisory authority and supervised civilian employees. Simply put, the temporary reassignment of Lewis to desk sergeant did not constitute an adverse employment action.

As to the legitimate-expectations element, Lewis cannot establish he was meeting legitimate job expectations. The evidence at trial will demonstrate that Lewis had been advised of continuing issues related to his work performance—most specifically concerning his failure to effectively supervise underperforming troopers, quality issues related to his pursuit packets, the timeliness of his video reviews, and his attitude towards his supervisor. These issues were documented several times and in several places. Most notably, Lewis's failure to meet legitimate expectations can be seen in the decline in his supervisory and overall ratings from 2016 to 2017. And because of that decline, Lewis was placed on a CAP meant *specifically* to address the area in which he was underperforming. The remedy was specifically tailored to resolve the issue. Without Lewis's underperformance, there would have been no need for the CAP.

As to the inference-of-discrimination element, ASP has met its burden by establishing a legitimate/non-discriminatory basis for transferring Lewis. Thus, the burden shifts to Lewis to prove pretext, meaning he must both (1) discredit ASP's asserted reasons for its employment decisions; and (2) show that the circumstances permit drawing the reasonable inference that the

real reason was race. *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005). To succeed at the pretext stage, Lewis must show that he and any potential comparators were "similarly situated in all relevant respects." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (internal quotations omitted). The employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (internal quotations omitted). Lewis is not similarly situated to any ASP employee identified during the discovery stage of his lawsuit.[2] He cannot establish that ASP responded to any alleged comparator differently than him. He does not know what the performance evaluation ratings were for any alleged comparator. And none of the alleged comparators had the same issues that Lewis had for as long as he had them. Lewis can put forth no evidence that ASP treated him differently than these alleged comparators.

There is no evidence indicating that Lewis was treated differently due to his race. Because he cannot show that racial animus influenced his being placed on a corrective action plan, he cannot satisfy the elements required to establish a prima facie case of racial discrimination under Title VII.

## CONCLUSION

ASP did not discriminate against Plaintiff because of his race.  Plaintiff was reassigned to a desk sergeant post because of years-long performance issues specifically related to his supervision of state troopers.  Plaintiff will not be able to put on any evidence, because none exists, indicating that Lewis was treated differently than a similarly situated white sergeant due to his race.[3]

---

[2] At his deposition, Lewis identified three alleged comparators: Don Johnson, Bobby Brown, and Michael Bain.
[3] There are several evidentiary issues that Defendant will raise in a motion in limine.

        Respectfully submitted,

        TIM GRIFFIN
        Attorney General


By:    Carl F. "Trey" Cooper, III (ABN 2007294)
        Senior Assistant Attorney General
        Laura Purvis  (ABN 2023239)
        Assistant Attorney General
        Office of the Arkansas Attorney General
        323 Center Street, Suite 200
        Little Rock, AR 72201
        Phone:  (501) 320-3085
        Fax:     (501) 682-2591
        Email: trey.cooper@arkansasag.gov
              laura.purvis@arkansasag.gov

        *Attorneys for Arkansas State Police*