**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**SIEGFRIED LEWIS**                                                                    **PLAINTIFF**

**v.**                                       **CASE NO. 4:18-CV-00510-JWB**

**ARKANSAS STATE POLICE**                                              **DEFENDANT**

**BRIEF IN SUPPORT OF
COMBINED MOTION IN LIMINE
AND REQUEST FOR RECONSIDERATION**

Plaintiff, Siegfried Lewis, filed this action against the Arkansas State Police ("ASP") and some of its employees. (DE 11). After dispositive motions were considered, the Court dismissed all claims except Mr. Lewis's Title VII claim that the ASP discriminated against him on the basis of race by reassigning him to a desk sergeant position from a sergeant position in highway patrol. (DE 48).

Concerning Mr. Lewis's entitlement to economic damages, given that the transfer resulted in no loss in pay, the Court stated that "Lewis will be permitted to put on evidence, to the extent there is any, that he lost other opportunities because he was transferred to the desk." (DE 48, at p. 7). The Court has also ruled that "the testimony and opinions of Lewis's damages expert, Barry Grant" and "exhibits relied on by Grant that were not disclosed in discovery" are excluded. (DE 88-1, at p. 14). And finally, regarding economic damages, the Court ruled that "Plaintiff may not introduce or rely upon any evidence related to his alleged loss of the opportunity to accrue overtime hours." (DE 102, at p. 17).

Any evidence of economic damages Mr. Lewis hopes to put on should be excluded since this evidence has already functionally been excluded. But, in the alternative, any testimony or exhibits related to an alleged loss of merit-pay increases should be excluded because evidence of

lost merit-pay increases cannot constitute a lost opportunity resulting from Mr. Lewis's reassignment to a desk position.

It is also anticipated that Plaintiff will seek to introduce testimony related to *Tappin, et al. v. Arkansas State Police, et al.*, case number 4:91-cv-627, but testimony and arguments related to *Tappin* are irrelevant and inadmissible under Rule 404(b) of the Federal Rules of Evidence. As a result, ASP presents this motion in limine to exclude the inadmissible evidence and requests that the Court enter an Order prohibiting Plaintiff and his counsel from referencing irrelevant and prejudicial information during any portion of the trial in the presence of the jury.

## ARGUMENT

### I.   Evidence of economic damages should be excluded.

#### A.  The Court should exclude any evidence of economic damages because the Orders of this Court have already functionally excluded it.

The calculations of economic damages Mr. Lewis has presented regarding his Title VII race discrimination claim have already been excluded, and he has given no notice of an intent to rely on anything other than what has already been ruled inadmissible.

During the discovery period, Mr. Lewis answered, in part, in response to several interrogatories that "[i]t is anticipated that Plaintiff will seek relief for his claims against Defendants in the form of lost wages; pre-judgment interest; liquidated damages; punitive damages; attorney's fees and costs" and that "Plaintiff reserves the right to supplement this response." Ex. 1, "Plaintiff's Answers to Defendant's First Set of Interrogatories." Seeming to provide clarity to these answers, Mr. Lewis stated in his deposition, in response to questions from his own counsel, that he would rely on his expert to determine what his economic losses were:

> Q. Okay. Okay. And you are making a claim for economic damages, correct, monetary losses?
>
> A. Yes.

Q. Okay. And do you have an expert that will be calculating those losses for you?

A. Yes, sir. Mr. Barry Grant.

Q. Okay. And you're going to rely on your expert to determine what your economic losses are?

A. Yes, sir. That would be based on if I'd worked those –

Q. No. No. I just want to know right now: Are you going to rely on him to calculate those losses for you?

A. Yes.

Ex. 2, "Excerpt from Deposition of Siegfried Lewis," 162:14-163:2.

ASP filed a motion in limine on July 19, 2021 arguing that Mr. Lewis's damages expert, including his testimony and report, should be excluded. (DE 62). That motion stated:

> [T]he report appears to calculate pre-termination damages related to discrepancies in pay between Plaintiff and other sergeants[,] but there is no claim in this case that would give rise to those damages. . . . The report further calculates pre-termination damages *related to certain annual merit raises* that the Plaintiff allegedly should have received. According to the report, this resulted in lost wages for 2016-2018, as well as future loss of social security income based upon rate of pay. These damages appear on page 2 of the report, columns 3, 7, 10[,] and 12 of the table for years 2016, 2017, and 2018. But again, there is no active claim in this case related to performance reviews, disciplinary actions, or anything else that would have affected Plaintiff's rate of pay or merit bonuses.

(DE 62, at p. 4) (emphasis added).

In its Order granting in part Defendant's motion in limine and excluding Mr. Lewis's expert and his report, the Court stated that it agreed "with ASP's contention that the opinions in Grant's expert report have no apparent relevance to the sole remaining Title VII claim in this case." (DE 88-1, at p. 6). This should include any evidence regarding annual merit raises. Here, as far as ASP is aware, the only evidence of economic damages that Mr. Lewis plans to introduce touches on an alleged loss in merit-pay increases. This sort of evidence has already been ruled irrelevant by this Court.

Further, the exclusion of economic damages should not have the effect of disposing of Mr. Lewis's claim altogether since Title VII allows plaintiffs to put on evidence of non-economic damages, and the statutory cap on damages in Title VII claims contemplates this as well. *See* 42 U.S.C.A. § 1981a(b)(3) (stating that potential compensatory damages in Title VII claims include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. . . .").[1] Therefore, the Orders of this Court and Mr. Lewis's own deposition testimony have functionally excluded the evidence of economic damages Mr. Lewis wishes to put on since Mr. Lewis's only expert/report calculating economic damages has been excluded. As a result, any testimony or exhibits relating to economic damages, including exhibits 8-11 of Mr. Lewis's proposed exhibits (*see* DE 135), should be excluded.

### B. In the alternative, evidence of an alleged loss in merit-pay increases should be excluded because this sort of evidence cannot constitute a lost opportunity resulting from Mr. Lewis's reassignment to a desk position.

Evidence of an alleged loss in merit-pay increases cannot constitute a lost opportunity resulting from Mr. Lewis's reassignment to a desk position. The Court ruled that the only evidence of economic damages it would allow Mr. Lewis to introduce would be "evidence, to the extent that there is any, that he lost other opportunities because he was transferred to the desk." (DE 48, at p. 7).

Merit-pay increases are determined based on the overall rating troopers receive on their performance evaluations each fiscal year. *See*, Ex. 3, "Email from Bill Bryant RE Merit Bonus Pay dated June 2, 2017," Ex. 4, "Email from Bill Bryant RE Merit Pay dated June 25, 2018." Greg Downs, ASP's 30(b)(6) witness in 2019, explained in his deposition how merit-pay increases function:

---

[1] The applicable subsection in the Title VII statutory cap is (b)(3)(D) since ASP employed more than 500 employees during the relevant time period.

Q. . . . So with a [corrective action plan ("CAP")] if a trooper is on CAP at the time merit increases are awarded, that trooper cannot get as much money under that merit program as he would if he had not been under the CAP; is that correct?

A. No.

Q. That's not correct?

A. That's a definitive statement. It depends on the supervisor, how they rate that person.

Q. Okay. So it's possible for that trooper to get the maximum amount that would be available to that trooper while he's on the CAP? That's possible, correct?

A. In theory it's possible.

Q. In theory?

A. Yes.

Q. Okay. Why in theory and not in practice?

A. Because, again, there is a specific limitation and penalty for a disciplinary action. There is not one prescribed as far as the evaluation process relative to a CAP. So, therefore, there is nothing that takes a – you're – a supervisor has – a supervisor does the evaluation, so they rate that person as they think is appropriate. It should be based – obviously, it should be objective.

Q. Okay.

A. But that doesn't mean that a person who is on a CAP – that person can still say during that period he did a great job in recovering, and I'm going to give him a – he's a role model. I don't know that it's happened, because I don't review that.

Q. Okay. So even though the employee is still on the CAP during the time that the merit increases are awarded, you're saying that that employee is still eligible to get the maximum amount that they would –

A. If their supervisor gives them the maximum rating, then, yes, they would. And then it's – that's – it's up to the supervisor. Unless it's challenged on appeal.

Q. Okay. So let me just make sure I understand what you're saying, okay. You're saying an employee could be on a CAP during the time frame in which the merit increase dollars are awarded, and his supervisor could still give him the maximum potential merit award; is that correct?

5

A. And I said it is a possibility, because there's no absolute bar like there is for a disciplinary action that I'm aware anywhere in policy or rule with the State Police or the Office of Personnel Management, for example.

Q. Okay. Okay. So then – so then a CAP does not absolutely bar an employee from receiving the monetary award in the form of a merit increase; is that correct?

A. Not like the disciplinary action, no.

Ex. 5, "Excerpt from Deposition of Gregory Downs," 84:18-86:18.

Here, Mr. Lewis was transferred to a desk sergeant position after he was placed on a corrective action plan. Any award of merit-pay increases would have been tied to the overall rating Mr. Lewis received on his performance evaluations, and in 2017, Mr. Lewis received his performance evaluation in March, months before he was placed on the corrective action plan in June/July. This cannot constitute a lost opportunity because, again, the merit increases are inherently related to the overall rating a trooper receives on his or her performance evaluation, and Mr. Lewis's performance evaluations are not at issue here. As far as ASP is aware, there has been no evidence produced in discovery that even suggests that Mr. Lewis's transfer to the desk sergeant position impacted his subsequent performance evaluation, which then impacted how much of a merit-pay increase he received. Therefore, this evidence cannot qualify as a lost opportunity, and as a result, it should be excluded.

II. **Testimony and arguments related to ASP's promotional practices and the *Tappin* lawsuit should be excluded because they are irrelevant and inadmissible under Rule 404(b).**

  A. **Testimony and arguments related to ASP's promotional practices and the *Tappin* lawsuit are irrelevant because the only claim remaining in this lawsuit is an individual Title VII race discrimination claim.**

In 1991, Mr. Lewis was a plaintiff in a class action lawsuit captioned: *Tappin, et al. v. Arkansas State Police, et al.*, 4:91-CV-627. That lawsuit centered around the implementation of ASP's promotional policies and practices as related to the class writ large; it did not include

6

individual claims of alleged discrimination. *See* Labor & Empl. L. P 143597 (C.C.H.), 2007 WL 9441366.

The only claim remaining in this lawsuit is an individual claim of race discrimination under Title VII. This is not a class action suit, and there are no retaliation, failure-to-promote, or generally-hostile-work-environment claims that are properly before this Court. ASP's promotional practices are not at issue in this case, which was the main issue in the *Tappin* lawsuit. The paramount question here is whether Mr. Lewis's supervisor, then-Lieutenant Sheeler, was discriminating against Mr. Lewis when he placed Mr. Lewis on a corrective action plan that effectively transferred him from being a highway patrol sergeant to a desk sergeant.

Any discussion regarding the proceedings and outcome of *Tappin* here is not only irrelevant, but its prejudicial potential substantially outweighs its probative value. The introduction of evidence related to *Tappin* and the promotional practices of the ASP would greatly prejudice the defense by confusing the issue (i.e., whether Mr. Lewis's reassignment was a result of discrimination on the basis of race) presently before the jury. This argument was raised, in part, in a previous motion in limine, but the Court did not specifically address *Tappin* in its Order. (*See* DE 88-1). Therefore, the Court should reconsider this argument and exclude this evidence as irrelevant.

**B. Testimony related to ASP's promotional practices and the *Tappin* lawsuit are inadmissible under Rule 404(b) because it does not overcome the elemental bar required to introduce evidence of prior acts.**

The *Tappin* lawsuit is an inadmissible prior act. "Prior acts include prior lawsuits." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008). And "evidence of prior acts is not admissible to prove the character of a person." *Id.* (internal quotations omitted). As with any prior act, however, it may be admissible if it is used for some permissible purpose (i.e., "to prove motive, intent, preparation[,] or plan"). *Id.* However, even if used for a permissible purpose, evidence of

prior acts must meet four requirements; it must be: "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the event at issue." *Id.* (internal quotations omitted).

Here, evidence of Mr. Lewis's involvement in the *Tappin* lawsuit is an inadmissible prior act. As to the first and second elements, *Tappin* is irrelevant to the sole remaining claim and higher in prejudicial effect than in probative value as detailed in the previous argument section. As to the fourth element, *Tappin* is neither similar in kind nor close in time to the event at issue. Again, *Tappin* deals with ASP's promotional practices; this lawsuit asks one question in isolation—was Mr. Lewis discriminated against on the basis of race when he was transferred from a sergeant position in highway patrol to a desk sergeant. Further, the *Tappin* lawsuit was initiated in 1991 and resolved in or around 1995. Lt. Sheeler did not begin working with the ASP until 1998, well after the resolution of *Tappin*. *See* Ex. 6, "Excerpt from Deposition of Jeffrey Sheeler," 11:11-13. The relevant time period in this lawsuit initiated in or around the end of 2014, 23 years after *Tappin* was filed and 19 years after it was resolved.

*Tappin* has no temporal proximity with this matter and no relevance to the issues in this lawsuit. Any testimony regarding *Tappin* should, therefore, be excluded.

## <u>CONCLUSION</u>

For these reasons, evidence regarding economic damages or, in the alternative, evidence regarding an alleged loss in merit-pay increases and evidence related to ASP's promotional practices and the *Tappin* lawsuit should be excluded.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:    Carl F. "Trey" Cooper, III (ABN 2007294)
Senior Assistant Attorney General

Laura Purvis (ABN 2023239)
Assistant Attorney General

Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Phone:  (501) 320-3085
Fax:      (501) 682-2591
Email: trey.cooper@arkansasag.gov
        laura.purvis@arkansasag.gov

*Attorneys for Arkansas State Police*