IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SIEGFRIED LEWIS**                                                                              **PLAINTIFF**

vs.                                            Case No. 4:18-cv-510-WMW

**ARKANSAS STATE POLICE**                                                       **DEFENDANTS**

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S COMBINED MOTION IN LIMINE
AND REQUEST FOR RECONSIDERATION**

COMES NOW Plaintiff Siegfried Lewis, by and through his counsel, Attorney Leonard Mungo, Mungo & Mungo At Law, PLLC, and for his response to Defendants Combined Motion in Limine and Request for Reconsideration, states:

1. Plaintiff admits.

2. Plaintiff admits in part. ASP discriminated against Plaintiff by reassigning him to a position as a desk sergeant from a position as a highway patrol sergeant, as well as giving Plaintiff low scoring performance evaluations, lower merit pay increases, and lowering Plaintiff's promotability.

3. Plaintiff denies. The evidence Plaintiff seeks to admit is admissible.

**WHEREFORE**, Plaintiff, Siegfried Lewis, respectfully requests this court denies Defendant's combined Motion in Limine and Request for Reconsideration.

1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SIEGFRIED LEWIS**                                                                 **PLAINTIFF**

vs.                                Case No. 4:18-cv-510-WMW

**ARKANSAS STATE POLICE**                                         **DEFENDANTS**

### PLAINTIFF'S BRIEF IN RESPONSE TO
### DEFENDANT'S COMBINED MOTION IN LIMINE
### AND REQUEST FOR RECONSIDERATION

#### I.   INTRODUCTION

This case was filed on August 8, 2018. *See* Original Complaint (ECF No. 1).

Plaintiff's Original Complaint identifies "compensation for wages lost" as an element of

damages in his Prayer for Relief. *Id*. In his First Amended and Substituted Complaint

(ECF No. 11, Filed Oct. 10, 2018), Plaintiff repeats his assertion that he seeks

"compensations for wages lost."

On January 30, 2019, Plaintiff served his Initial Disclosures Pursuant to Rule

26(a)(1) on Defendant, in which Plaintiff stated:

> Damages in this case have not been calculated; however, the categories of
> damages are as follows: pre-judgment interest; post-judgment interest;
> liquidated damages; compensatory damages in the form of front pay and
> back pay, if applicable, statutory damages, punitive damages, if applicable;
> court costs; and attorney's fees. (See ECF No. 99-4 p. 2-7)

Plaintiff incorporated his objection and Answer to Interrogatory No. 10 in response

to Interrogatory No. 15 and 16, which requested damages information for non-economic

damages and loss of income, benefits and earning capacity. (See ECF No. 99-5 p. 2-27).

2

Following this Court's order partially granting Defendant's Motion for Summary Judgement, Plaintiff's only remaining claim to be tried is Plaintiff's Title VII race discrimination claim. (See ECF no. 48). Defendants concede in it's brief in support of its motion that the Court in its November 26, 2019, order stated that "Lewis will be permitted to put into evidence, to the extent there is any, that he lost other opportunities because he was transferred to the desk." (See ECF 150 at p. 1).

This Court acknowledged Plaintiff's ability to present evidence at trial related to economic damages in its Order denying testimony, reports and documentation used in support of preparing reports used by expert Barry Grant. (See ECF no. 89 at p. 3). In December of 2022 this Court ordered that "Plaintiff may not introduce or rely upon any evidence related to his alleged loss of the opportunity to accrue overtime hours." (See ECF No. 102 at p. 17). There have been no other orders entered by this Court regarding the introduction of evidence to support Plaintiff's economic losses and none of the above cited can be interpreted to mean that Plaintiff is prohibited from presenting any evidence of economic losses and or damages which would include a merit increases[1]. This Court should not exclude evidence related to Plaintiff's economic damages or opportunities to receive a merit increase.

Testimony related to *Tappin* is relevant to Plaintiff's present claims and for the reasons discussed below this Court should not exclude testimony regarding same.

---

[1] Magistrate Judge Leo Brisbois 12/16/22 Order (ECF 102) unreasonably denied & completely ignored P's argument in its Motion on the Admissibility of Supplemental Damage Calculations (ECF No. 99) on 11/4/22.

**ARGUMENT**

**I.      Evidence of Economic Damages should not be excluded**

As explained in the Introduction, this Court has not actually or functionally excluded the introduction of *all* evidence of economic damages in this matter, rather the Court specifically spelled out what evidence of economic damages could not be used by Plaintiff at trial.

Plaintiff's trial exhibits "P8" and "P10" which Defendant objects to for use at trial are emails from Bill Bryant (Colonel of the Arkansas State Police at the time) dated June 2, 2017, and June 25, 2018, that reflect how merit awards are based on results of performance ratings (Ex. 1 emails from Bill Bryant). Plaintiff's performance rating from 2014-2016 were "Exceeds Standards", however in Plaintiff's performance evaluations that preceded (and following) Plaintiff's reassignment to desk duty, Plaintiff received an "Above Average" performance rating resulting in a decrease in merit pay. (See Ex. 2 Plaintiff's performance evaluations). Further, the evidence will show, and Plaintiff testified during his deposition that Sheeler, Plaintiff's supervisor who subjected Plaintiff to the unlawful discriminatory reassignment attempted to decrease Plaintiff's performance evaluation score although same was unjustified. (See Ex. 3 Plaintiff's Deposition Transcript at p. 192 l. 15 – p. 193 l. 2).

While Defendant's cite no law in reference to Plaintiff's alleged failure to give notice of intent to rely on anything other than what has already been ruled admissible, Plaintiff as stated above in numerous ways disclosed that Plaintiff was seeking loss wages, compensatory damages and loss of income. The Internal Revenue Code defines wages as:

(a) Wages.--For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash; except that such term shall not include--

(1) in the case of the taxes imposed by sections 3101(a) and 3111(a) that part of the remuneration which, after remuneration (other than remuneration referred to in the succeeding paragraphs of this subsection) equal to the contribution and benefit base (as determined under section 230 of the Social Security Act) with respect to employment has been paid to an individual by an employer during the calendar year with respect to which such contribution and benefit base is effective, is paid to such individual by such employer during such calendar year. If an employer (hereinafter referred to as successor employer) during any calendar year acquires substantially all the property used in a trade or business of another employer (hereinafter referred to as a predecessor), or used in a separate unit of a trade or business of a predecessor, and immediately after the acquisition employs in his trade or business an individual who immediately prior to the acquisition was employed in the trade or business of such predecessor, then, for the purpose of determining whether the successor employer has paid remuneration (other than remuneration referred to in the succeeding paragraphs of this subsection) with respect to employment equal to the contribution and benefit base (as determined under section 230 of the Social Security Act) to such individual during such calendar year, any remuneration (other than remuneration referred to in the succeeding paragraphs of this subsection) with respect to employment paid (or considered under this paragraph as having been paid) to such individual by such predecessor during such calendar year and prior to such acquisition shall be considered as having been paid by such successor employer;

(2) the amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally (or for his employees generally and their dependents) or for a class or classes of his employees (or for a class or classes of his employees and their dependents), on account of--

(A) sickness or accident disability (but, in the case of payments

5

made to an employee or any of his dependents, this subparagraph shall exclude from the term "wages" only payments which are received under a workman's compensation law), or

(B) medical or hospitalization expenses in connection with sickness or accident disability, or

(C) death, except that this paragraph does not apply to a payment for group-term life insurance to the extent that such payment is includible in the gross income of the employee;

26 U.S.C.A. § 3121 (West).

Plaintiff's merit increase would be included in the Internal Revenue Code's definition of wages laid out above. Plaintiff in his deposition did state that he was relying on his expert to calculate his economic losses, however, this was prior to his economic expert and his reports being excluded from being introduced as evidence at trial, after such a ruling excluding all evidence to prove economic damages would prejudice Plaintiff.

Defendant cites its own brief in which it referenced Plaintiff's economic expert's use of Plaintiff's merit raises to calculate damages, however the Court in its order regarding Defendant's Motion to exclude held that "Defendant's motion is granted to the extent it seeks to exclude from evidence  . . . (2) exhibits relied on by Barry Grant *that were not disclosed in discovery* . . ." (See ECF No. 89 p. 14). It should be further noted that Plaintiff used the documents supporting economic losses as it relates to merit increase as exhibits in support of its response to Defendant's Motion for Summary Judgement. (See ECF 32-3 p. 42-47). In Defendant's Reply brief to Plaintiff's Motion for Summary Judgement, Defendant acknowledged that Plaintiff had a claim for economic and compensatory damages based on the merit increase (ECF No. 37 p. 4). Although Plaintiff withdrew its claim alleging the lower performance evaluation rating as a count for liability (Plaintiff conceded that it was not an adverse employment action in the name of

judicial economy) does not mean that Plaintiff cannot use the merit increase as evidence for economic loss as the incidents are related.

To the extent that Defendants rely on the Court's language in its order that Plaintiff can show damages that resulted from Plaintiff's being "reassigned to the desk." Plaintiff is of the belief that Defendant will put on testimony that Plaintiff's performance prior to him receiving lower Performance evaluation scores is what led to Plaintiff's reassignment. The two cannot be separated. Further, Plaintiff was treated differently and discriminated against when he was rated lower than what he deserved on his performance evaluation, just because said treatment is not considered the adverse action in Plaintiff's lawsuit it is still related to the discriminatory treatment Plaintiff was subjected to because of his race.

II. **Testimony related to ASP's discriminatory employment practices and the *Tappin* lawsuit are relevant and admissible.**

Plaintiff offered testimony during his deposition that Sheeler had knowledge of and discriminated against Plaintiff for being a named plaintiff in the *Tappin* which alleged unlawful discriminatory employment practices against minority employees employed by ASP. (See. Ex. 3 Plaintiff Dep. Tr.) Plaintiff further provided testimony that once the Consent Decree that resulted from the *Tappin* lawsuit was lifted he no longer felt protected, and that the lawsuit was a reflection of the common unlawful discriminatory employment practices and culture employed by ASP e. (See Exhibit 3 Plaintiff Dep. Tr.) This evidence is certainly relevant.

The Eighth Circuit has held, "Because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely

admitted at trial." See *McDonnell Douglas v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973); *Patterson v. Masem,* 774 F.2d 251, 255 (8th Cir.1985) *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 155–56 (8th Cir. 1990). While FRE 404(b) normally excludes evidence of previous acts of individuals, in this present lawsuit against ASP, the Court should allow evidence of previous discriminatory employment practices to be freely admitted because it is relevant. To prevent Plaintiff from providing such evidence to the jury would prejudice Plaintiff in this employment discrimination case. As the Court stated in *Hawkins* "Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices—evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." *Id.* at 155.

### III.   CONCLUSION

For the reasons stated above, Plaintiff should be allowed to present evidence of economic damages and or losses from merit pay and Plaintiff should be allowed to elicit relevant testimony regarding the *Tappin* lawsuit.

Respectfully submitted,

**PLAINTIFF SIEGFRIED LEWIS**

THE MUNGO LAW FIRM, PLC
31700 Telegraph Rd., Suite 250
Bingham Farms, Michigan 48025
Telephone: (248) 792-7557

Facsimile: (248) 792-7303
caseaction@mungoatlaw.com

Leonard Mungo
Mich. Bar No. 43562
Admitted *Pro Hac Vice*
mungol16@msn.com

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Ste 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040


Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com