# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SIEGFRIED LEWIS PLAINTIFF

VS. CASE NO. 4:18-CV-510-BSM

ARKANSAS STATE POLICE DEFENDANT

---

ORAL DEPOSITION

OF

SIEGFRIED ALLAN LEWIS

---

August 15, 2019

Sanford Law Firm
650 Shackleford Road
Little Rock, Arkansas 72211

Shyloa Myers, RPR, CCR
Arkansas Lic. No. 710

Q. Okay. Exhibit 15.
A. The investigator when I mentioned specifically to him Jeff Sheeler, he says, "I need his boss."
And when I began to explain our command staff, he said, "Well, who's the director?"
And I said, "Colonel Bryant."
And so I gave him Hagar's boss and Colonel Bryant. Those were the names he put in there. And so that precipitated putting them in there.
And, according to the EEOC investigator, he said, "I need to have that in there."
So I'm following -- following in that as to getting their names in there.
Q. Okay. Do you have any -- do you believe that -- well, I don't need to answer -- ask that question.
Okay. I -- on the -- on the EEOC form, on the Charge of Discrimination, you also checked the box for retaliation; correct?
A. Correct.
Q. Okay. I want you to tell me when you assert that you have been retaliated against -- first I want to ask you who? What individuals do you assert have retaliated against you?
A. I will call this a systematic approach.
Q. Okay.
A. And the reason why I say that, no one single person

since the Tappin lawsuit -- and if you look at my history and the history of the State Police being that racially discriminatory agency.

And since I was one of the plaintiffs, anything that could be viewed for me as an advantage in terms of promotions, whatever, it's killed on the -- at -- or changed at the -- at any level.

If you look at the number of just simple transfers that I requested, they have no reason to not give me that. Not saying that I -- you know, it should be given just because I'm there. But when you put out information and you look at trying to make it available -- and as it says in policy, it's supposed to be a fair and equitable process for transfers, promotions, all those things.

When it comes to Siegfried Lewis, those things hasn't happened.

And when you talk about the promotional exam, that comes up. You know, I will tell you, I'm not the brightest bulb in the box; but I know I can read and write and make sense of common things.

But when we go before the board and all of a sudden my answers aren't any good and I get a lower rating, I have a problem with that. Because the things I do out in the field will translate to a promotional exam, or should as my career goes in the State Police.

I've watched officers even in Troop A under Sheeler, Mike Bain, instead of trying to further an officer's career, they show them the door real quick. And in the last four or five years, we've had at least five minority officers -- I think four or five that probably would have stayed; they're gone.

But getting back to why I say that, when you look at all the different things that I've applied for, why shouldn't I get them? So if there wasn't some underlying reason that Siegfried Lewis -- because I was the last plaintiff from that Tappin lawsuit that's still working.

And when you look at that and just even simple training -- you talk about the special assignments. You know, in those little specialized training, any of that stuff comes up, if I put my name in or say I want to do it, "Oh, we don't have money in the budget." Or "Your weren't selected." Or "We'll catch you next time."

When I started having trouble with some of the other command staff, meaning that they started trying to single me out -- and if I just started going back to when I first got promoted to where I am now, this is almost like *deja vu*.

When I first got promoted, I had a captain that because I wasn't who he wanted, who he thought he was going to get, I didn't have an office. I worked out of my car for, like, over six months. Any time something happened, I'm having to

stop, pull over, open my trunk and get stuff out.

They're like, "Why don't you have an office?"

"Because Captain Chambers wouldn't assign me one."

And then of course I started getting lower evaluations. You know, I'm like, come on. Am I just going to have to just keep fighting these folks?

I get past that point. I get another Captain -- you've probably heard of the name Gloria Weakland. I get her. Lower evaluation. But whenever it comes to taking care of business and taking care of the guys, I take care of them. But when I get to evaluation, they're low.

I finally got to the point to where when Captain Eremea and Lieutenant Finger was there, I started getting, you know, decent evaluations. I left it alone for a while.

And then after those retired, it's, like, here it comes again. It's like I've got to get one more punch at you to show you that, yeah, you sued us; but -- because every time a promotion comes up, they talk about the Tappin lawsuit or they have to do these changes. That still rubs a lot of people the wrong way because they had to do that.

And just some information that just come to me, a retired captain with the Tennessee Highway Patrol, who sat in on many of our boards, she related to me how Kathy Sparks has said, "Hey, now that the Consent Decree is gone, we can now start hiring some real troopers." Meaning that we don't

Q. Okay. All right. Let's take this one at a time here. Sheeler you believe retaliated against you based upon your participation as a plaintiff in the Tappin lawsuit, which alleged race discrimination and -- in the employment practices by the Arkansas State Police in the areas of promotions, discipline, and transfers; correct?

MR. BIRD: Object to the form.

A. Correct.

Q. Okay.

A. And it would be because of my race.

Q. And -- and they also retaliated against you and/or just outright discriminated against you because of your race?

MR. BIRD: Object to the form.

Q. Okay. And we're talking about Sheeler right now. Take -- I'm going to take Hagar in moment, okay?

A. Yes, sir.

Q. Okay. Why do you believe that Sheeler discriminated against you because of your race and/or retaliated against you because of your participating as a plaintiff in the Tappin lawsuit against ASP?

A. It has been a common practice or perception of the racism and discriminatory practices of the Arkansas State Police. And he would be one that would continue allowing those kinds of things to happen.

Q. What would cause you to believe that he acted with

Q. Okay. Do you believe Captain Eremea when he said that he was told that by another trooper?
A. Yes. I know both parties well and I would consider them both to be very credible.
Q. Okay. Does it surprise you that that would have been reported about Lieutenant Sheeler, based upon your experience with him?
A. No, it doesn't surprise me.
Q. Okay. When you were told you were no longer protected by Lieutenant Sheeler, you -- Counsel asked you that question earlier.
Did that to you have any racial implications?
A. Yes.
Q. Okay. And how so?
A. Being at one point when we had the Tappin lawsuit, we were in a protected class; and that in itself kind of took a little pressure off of us. With the removal of the Consent Decree, that kind of opened the door back up. And --
Q. Did you have a black captain there for a while or?
A. I did.
And during that time, Sheeler had commented to him that he wanted to lower my performance evaluation. And all he asked, "Was do you have documentation?" If you have documentation to support your claim, you do it.
And at that time, Sheeler did not have any

documentation that he could show; and so he had to rate me properly. And after --

Q. And this was a black captain that told him that?

A. Yes, Captain Alex Finger.

Q. Okay. All right. So do you kind of relate those to -- that experience and conversation to Sheeler telling you you're no longer protected as having racial implications?

A. That --

MR. BIRD: Object to form.

A. -- would also factor into it.

Q. What would also factor into it, sir?

A. That Captain was also black.

And -- and going half a step farther back, I had a good relationship, working relationship with Captain Eremea as to my work performance.

Q. You spoke about employment panels. Counsel asked you questions about the employment panels that would conduct I think interviews for -- for transfers and promotions; is that correct?

Did I have that correct? Or you had -- he had asked you questions about panels and whether or not panels are primarily white.

Were those, like, promotion and transfer panels? Or can you . . .?

A. If memory serves me correctly, I think we were talking

CERTIFICATE

STATE OF ARKANSAS )
)ss
COUNTY OF SALINE )

I, Shyloa Myers, CCR, RPR, and Notary Public, do hereby certify that the foregoing testimony of the witness, SIEGFRIED ALLAN LEWIS, was reported verbatim through the use of the stenographic method and thereafter transcribed by me or under my direct supervision to the best of my ability, taken at the time and place set out on the caption hereto.

I FURTHER CERTIFY that in accordance with Rule 30(e) of the Rules of Civil Procedure, review of the transcript WAS NOT requested.

I FURTHER CERTIFY that I am not a relative or employee of any attorney or employed by the parties hereto, nor financially interested or otherwise in the outcome of this action, and that I have no contract with the parties, attorneys, or persons with an interest in the action that affects impartiality or that requires me to provide any service not made available to all parties to the action.

WITNESS MY HAND AND SEAL this 1st day of September, 2019.

________________________________ _______________

Shyloa Myers, RPR, Notary Public (SEAL)
Arkansas CCR Lic. No. 710