IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**SIEGFREID LEWIS**  **PLAINTIFF**

vs.  Case No. 4:18-cv-510-BSM

**ARKANSAS STATE POLICE**  **DEFENDANTS**

**PLAINTIFF'S MOTION FOR JUDGEMENT AS MATTER OF LAW AND MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, FOR AMENDMENT OF THE JUDGEMENT PURSUANT TO FED. R. CIV. P. 50(B)**

TO: Defendant Arkansas State Police, and its attorneys, Carl "Trey" Cooper, III and Laura Purvis, 323 Center St., Ste. 200, Little Rock, Arkansas 72201.

PLEASE TAKE NOTICE that Plaintiff Siegfried Lewis hereby moves the Court, before the Honorable Jerry W. Blackwell, Judge of the United States District Court, for an Order granting Plaintiff's renewed motion for judgement as a matter of law, pursuant to Fed. R. Civ. P. 50(b), and enter an Order granting Plaintiff's motion for an amendment of the judgement, pursuant to Fed. R. Civ. P. 59(a) and (e) or in the alternative grant Plaintiff's Motion for a new trial.

The ground for this Motion is that for the reasons set forth in the Memorandum of Law in Support of Plaintiff's Renewed Motion for Judgement as a Matter of Law and the Motion for Amendment of the Judgement, pleadings, files, records and proceedings herein or in the alternative grant Plaintiff's Motion for a New Trial. Plaintiff, Siegfried Lewis is entitled to a judgement as a matter of law pursuant to Fed. R. Civ. P. 50(b) and

should be granted the amendment of the judgement which was entered in this action on 10/9/2024 or in the alternative a New Trial

Dated: 11/4/2024

Respectfully submitted,

**PLAINTIFF SIEGFRIED LEWIS**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER
650 SOUTH SHACKLEFORD, SUITE 411
LITTLE ROCK, ARKANSAS 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

/s/ Josh Sanford
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

MUNGO & MUGNO AT LAW, PLLC
31700 TELEGRAPH RD., SUITE 250
BINGHAM FARMS, MICHIGAN 48025
TELEPHONE: (248) 792-7557

Leonard Mungo
Michigan Bar No. 43562
Pro Hac Vice Motion Forthcoming
caseaction@mungoatlaw.com

## CERTIFICATE OF SERVICE

I, Leonard Mungo, do hereby certify that on the date imprinted above, a true and correct copy of the foregoing MOTION was electronically filed via the CM/ECF system, which will provide notice to the following attorneys of record:

Carl F. "Trey" Cooper III,
Senior Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Telephone: (501) 682-2007
Trey.cooper@arkansasag.gov

/s/ *Leonard Mungo*
**Leonard Mungo**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SIEGFRIED LEWIS**                                                    **PLAINTIFF**

vs.                      Case No. 4:18-cv-510-WMW

**ARKANSAS STATE POLICE**                            **DEFENDANTS**

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS RENEWED
MOTION FOR JUDGEMENT AS MATTER OF LAW AND
MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE,
FOR AMENDMENT OF THE JUDGEMENT PURSUANT
TO FED. R. CIV. P. 50(B)**

## I. INTRODUCTION

This Memorandum of Law is submitted on behalf of Plaintiff Siegfried Lewis ("Plaintiff") in support of his Renewed Motion for Judgement as a matter of Law, pursuant to Fed. R. Civ. P. 50(b), Motion for a New Trial or in the alternative an Order amending the judgement entering liability against Defendants Arkansas State Police pursuant to Fed. R. Civ. P. 59 or, in the Alternative enter an Order granting Plaintiff a New Trial.

A jury trial was held in this action from October 1 – 4, 2024. On October 7, 2024, the jury's verdict was returned in favor of Defendant on October 7, 2024. The Court entered a final Judgement in accordance with the jury's verdict on October 9, 2024.

For the reasons stated below, the Court should grant Plaintiff's renewed motion for judgement as a matter of law on Plaintiff's race discrimination claim. If the Court does not do so, the court should enter an Order amending the Judgement and entering

a Judgement in favor of Plaintiff as to the claim made against Defendant or in the Alternative enter an Order granting Plaintiff's motion for a new trial.

## II. ARGUMENT

### A. STANDARD OF REVIEW

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides as follows:

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) Resolve the issue against the party; and

(B) Grant a motion for judgement as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue."

Rule 50(b) provides that if the trial court does not grant a motion for judgment as a matter of law made under Rule 50(a), the movant may file a renewed motion for judgement as a matter of law and may include an alternative or joint request for a new trial under Fed. R. civ. P. 59. In ruling on the renewed motion, the Court may order a new trial or direct the entry of judgement as a matter of law. Fed. R. Civ. P. 50(b) (2) and (3). If the court grants a Renewed Motion for Judgement as a Matter of Law, it must conditionally rule on a Motion for a New Trial by determining whether a new trial should be granted if the judgement is later vacated or reversed while stating the grounds for conditionally granting or denying.

The Eighth Circuit has held "In both Rule 56 motions for summary judgment and Rule

50 motions for judgment as a matter of law, the inquiry is the same: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 50(a) allows the judge in a jury trial to enter judgment against a party with respect to a claim or defense "that cannot under the controlling law be maintained or defeated without a favorable finding on that issue," when the party has been fully heard on the issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue." Fed.R.Civ.P. 50(a). *Kinserlow v. CMI Corp*, 217 F.3d 1021, 1025 (8th Cir. 2000).

The court should grant judgment as a matter of law "only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.' " *Id.* "In a motion for judgment as a matter of law, the nonmoving party is only entitled to the benefit of reasonable inferences." *Fought v. Hayes Wheels Int'l, Inc.,* 101 F.3d 1275, 1277 (8th Cir.1996). A "reasonable inference is one 'which may be drawn from the evidence without resort to speculation. When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate.' " *Id.*

    i.    **No Reasonable Jury Could Find that there was a Legally Sufficient Evidentiary Basis to reach a Verdict in Favor of Defendant on Plaintiff's Title VII Race Discrimination Claim.**

The Eight Circuit has held, that in order for a Plaintiff to establish a prima facie case under Title VII, "First, Plaintiff must establish a *prima facie* case of race discrimination. To *974 do so, she must demonstrate that: (1) (s)he is a member of a protected class; (2)

(s)he was meeting her employer's legitimate job expectations; (3) (s)he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Id.* "Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner." *Id.* at 853–54. A failure to establish even one element of a *prima facie* case defeats a Title VII discrimination claim." *Tatum v. City of Berkeley*, 408 F.3d 543, 550–51 (8th Cir. 2005). *Moss v. Texarkana Arkansas Sch. Dist.*, 240 F. Supp. 3d 966, 973–74 (W.D. Ark. 2017).

Plaintiff's case being one absent of direct evidence of discriminatory animus, Plaintiff used the *McDonnell Douglas* framework to make its case. In such instances the Court has provided a framework for Plaintiff's to prove intentional discrimination by creating inferences of discrimination and in doing so held, "In recognition of the fact that explicit, inculpatory evidence of discriminatory intent is rare, see *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1108 (8th Cir.) (" '[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes' ") (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)), *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994), the Supreme Court has established an alternative method of proof by which an inference of intentional discrimination can be raised. This inferential method of proof, which involves an elaborate set of shifting burdens of production, was originally set forth in *McDonnell Douglas* and then refined in *Burdine.* (It is well settled that this analysis, although developed in the context of Title VII, applies with equal force to claims under the ADEA. *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994); *Holley,* 771 F.2d at 1164.)

Under the *McDonnell Douglas* framework, the plaintiff creates an inference of intentional discrimination by establishing the so-called *prima facie* case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *see Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir.1995) ( "[t]he importance of the prima facie showing is that it creates the inference that the employer terminated the plaintiff for an impermissible reason"). While its elements will vary depending on the circumstances of the case, the fundamental purpose of the *prima facie* case is to require the plaintiff to show (1) that an adverse employment action occurred, and (2) that the most common explanations for an adverse employment action, such as incompetence, are not applicable. Once established, the *prima facie* case entitles the plaintiff to a rebuttable presumption that intentional discrimination played a role in the adverse employment action. *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 776 (8th Cir. 1995).

The Court in *Hutson* went on to say, "When and if the plaintiff establishes a *prima facie* case of discrimination, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory *777 reason for the adverse employment action. *Hicks,* 509 U.S. at ——, 113 S.Ct. at 2747; *McLaughlin,* 50 F.3d at 510. If the defendant fails to do so, the plaintiff is entitled to a finding of intentional discrimination. *Hicks,* 509 U.S. at —— n. 3, 113 S.Ct. at 2748 n. 3; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 ("if the employer is silent ... the court must enter judgment for the plaintiff"). If the defendant does provide such a reason, however, the burden shifts back to the plaintiff to demonstrate that the reason provided was a pretext for discrimination. *Id.*

When it comes to showing pretext, the Eight Circuit Court has held, " 'A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow

its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.' " *Schaffhauser v. United Parcel Serv., Inc.,* 794 F.3d 899, 904 (8th Cir. 2015) (quoting *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)) *Edwards v. Hiland Roberts Dairy, Co.,* 860 F.3d 1121, 1125–26 (8th Cir. 2017).

The Jury Instructions selected by this Court for Plaintiff's trial (as it relates to Defendant's liability for employment discrimination against Plaintiff) (Jury Instructions No. 7, 8 and 9) were selected from or influenced by the Eighth Circuit Model Jury Instructions. Jury Instruction No. 7 which is supposed to define "pretext" reads: "You may find that the Plaintiff's race was a motivating factor in the Defendant's decision if it has been proved that the Defendant's stated reasons for its decision are not the real reason but are a pretext to hide race discrimination." Jury Instruction No. 8 which relates to Defendant's liability read "As used in these instructions, the Plaintiff's race was a "motivating factor," if the Plaintiff's race played a part in the Defendant's decision to reassign the Plaintiff to a desk sergeant position. However, the Plaintiff's race need not have been the only reason for the Defendant's decision to reassign Plaintiff." Instruction No. 9 read: "Your verdict must be for Plaintiff Siegfried Lewis and against Defendant Arkansas State Police on Plaintiff's claim that he was discriminated against because of his race if all of the following elements have been proved: '*First*, the Defendant reassigned Plaintiff to a desk sergeant position; *Second,* the Plaintiff's race was a motivating factor in the Defendant's decision…'"

The evidence during Plaintiff's trial established that Plaintiff was subjected to race discrimination when the Arkansas State Police, specifically Jeffrey Sheeler, Plaintiff's then

direct supervisor, transferred Plaintiff against his objection to a desk position where Plaintiff no longer had the ability to supervise his troopers any longer:

- Plaintiff is an African American who was a Senior Sergeant for the Arkansas State Police at the time the events occurred.

- Lt. Jeffrey Sheeler (white), Plaintiff's direct Supervisor at the time of the incident placed Plaintiff on a Corrective Action Plan which consisted of Plaintiff being transferred to a desk sergeant position; Sheeler Trial Testimony

- After Lt. Sheeler transferred Plaintiff to a desk position, Plaintiff did not supervise Troops in Troop A again; Sheeler trial testimony.

- Lt. Sheeler had performance issues with all of the Sergeants (including the same and or similar issues he alleged Plaintiff to have had) he supervised at the time that he made the decision to reassign Plaintiff to a non-supervisory position. Sheeler trial testimony.

- Plaintiff's direct supervisor in Troop A for the two (2) years prior to Sheeler becoming Plaintiff's direct supervisor (2014 -2015), Darran Austin rated Plaintiff "Exceeds Standards" (The Highest Rating that could've been given Plaintiff) for both of the annual performance evaluations for Plaintiff; Trial Exhibit 4 and 5.

- When Lt. Austin supervised Plaintiff in Troop A, other sergeants in Troop A had similar performance issues as Plaintiff and they were common with the dynamics of the job; Trial testimony by Austin.

- Although Austin perceived that Plaintiff had some issues like the other sergeants in Troop A, the fact that Austin rated Plaintiff as "Exceeds Standards" on his annual performance evaluations, evidenced the fact that Plaintiff overcame performance issues Austin may have perceived that Mr. Lewis had. Austin testified to this fact at trial; Austin testified to this fact at trial.

- At the time Plaintiff had his supervisory authority over his troops taken away, Austin had never witnessed it happen to a Sergeant in Troop A and felt that most sergeants would look at having those duties stripped as a new inferior role; Austin trial testimony.

- Lt. Sheeler gave Plaintiff an "Exceeds Standards" on Plaintiff's Performance Evaluation for the period of 2015-2016 (Trial Exhibit No. 6); Trial Exhibit 6 DK176.

- Lt. Sheeler gave Plaintiff an "Above Average" rating, the second highest rating a Sergeant could have received, for Plaintiff's 2016-2017 Performance Evaluation signed in April of 2017 (Trial Exhibit No. 7); Trial Exhibit 7 DK176.

- Lt. Sheeler placed Plaintiff on a Corrective Action Plan in June of 2017; Trial Exhibit 2 DK176.

- Lt. Sheeler didn't feel that Plaintiff was having "serious" issues until 2016; Sheeler Trial Testimony. Sheeler Trial Testimony.

- Sheeler felt Don Johnson had performance issues that were of a nature of equal concern to Plaintiff's issues for over a period of two (2) years. Sheeler Trial Testimony.

- When Sheeler reassigned Plaintiff to a desk position in his mind, he was disciplining Plaintiff, not correcting Plaintiff's performance;

- During the time Sheeler supervised Plaintiff, Sheeler was not around the office often and was hard to locate/reach;

- Plaintiff was the only African American Sergeant out of a total of four (4) assigned to Troop A and under the direct supervision of Mr. Sheeler, the other three (3) Sergeants assigned to Troop A were white;

- Each of the other white Sergeants in Troop A had the same or similar performance issues Plaintiff was alleged to have had;

- Captain Hagar (white), Sheeler's direct supervisor and Plaintiff's second-line supervisor, although signing off on Plaintiff being reassigned to a desk position, never personally perceived that Plaintiff had performance issues but rather that he relied on Sheeler's representations of Plaintiff's performance.

- At the time that Plaintiff was reassigned and had his supervisory authority over his troops taken away, Captain Hagar had not heard of that ever being done to any other sergeants before;

- Captain Finger, Plaintiff's Second line supervisor prior to Hagar taking over in 2016, would not have signed off on Plaintiff's Corrective Action Plan and testified that Plaintiff did not have performance issues that rose to the level of being placed on a Corrective Action Plan;

- Captain Finger testified at trial that It is inappropriate for a Lieutenant to consider a sergeant's conduct from a different annual performance evaluation

period when conducting a present performance evaluation of that same sergeant;

- Don Johnson is a white Sergeant also was formerly assigned to Troop A and directly supervised by Sheeler during the time Plaintiff was, who Sheeler also alleged had performance issues equally concerning to that of Plaintiff; That Johnson's problems existed since 2015 but not put on COA until October 2018 and had not have his supervisory duties taken away.

- Don Johnson's issues existed during his entire time in Troop A and under Lieutenant Sheeler; Plaintiff's annual performance appraisals exceeded standards from 2013-2014 through March of 2016, and above average through February 2017. Factually he could not have been required to be placed on PIP. Sheeler trial testimony and trial exhibits 4-7 DK176.

- Jeffrey Sheeler placed Don Johnson on a Corrective Action Plan for his alleged performance deficiencies but did not strip Don Johnson of his ability to supervise his troopers as a part of said Corrective Action Plan; No evidence was produced at trial to support the assertion that Don Johnson's performance, since 2015, unlike Lewis', did not merit him being placed on a PIP and having his supervisory duties taken away. Sheeler trial testimony and trial exhibit 17 DK176.

- Sheeler never recommended a reassignment to a nonsupervisory position to any of his white Sergeants despite them suffering the same performance issues Sheeler alleged Plaintiff to have had. Sheeler trial testimony.

- Testimony at trial was provided by Sheeler that Both Plaintiff and Johnson were Sergeants that he supervised and alleged to have the same kind of supervisory issues but Mr. Lewis who was African American got treated less favorably by Mr. Sheeler. Sheeler trial testimony.

- The desk position that Plaintiff was transferred to was looked down upon and taken over by Sergeants with health issues. Trial testimony by Elvis Mull.

As stated above in *United States Postal Serv. Bd. of Governors,* there will be seldom if at all times where a witness can testify as to someone's motives in race discrimination cases. 460 U.S. 711, 716, 103 S.Ct. Hence the reason the Courts have allowed Plaintiffs to use pretext to prove discrimination, Plaintiff did just that. Defendant's so called legitimate business reasons for reassigning Plaintiff to a position where he was stripped

of his supervisory duties was because of Plaintiff's performance. Plaintiff's high ratings in his previous four (4) performance evaluations which were all presented to the jury are evidence that Plaintiff's performance as a basis for said adverse action was clearly pretext for the transfer. It should be noted that at trial, Arkansas State Police personnel acknowledged that performance evaluations were to be conducted accurately and impartially pursuant to Arkansas State Police policy. Sheeler testified at trial that his inaccurate annual performance evaluation of Plaintiff constituted filing a false police report.

Don Johnson, a white similarly situated Sergeant had performance issues that were of equal, if not greater, concern as to that of Plaintiff's performance issues yet, Plaintiff's supervisor, Lt. Sheeler testified at trial that he treated Johnson more favorably than Plaintiff. Defendants also argued that Plaintiff had performance issues for a longer period of time than Johnson, however Sheeler's testimony and documentation presented at trial proved this was not true. A part of Sheeler's reasoning behind placing Plaintiff on Corrective Action Plan where he no longer had supervisory duties was allegedly due to Plaintiff's performance issues which began before Sheeler became Plaintiff's supervisor. Captain Finger and Darran Austin's testimony refuted this evidence because Plaintiff's prior conduct as evidenced by his exceed standards annual performance rating, should not have been used as a basis for placing Plaintiff on the Corrective Action Plan and that Plaintiff overcame any issues he may have had during said periods.

Captain Finger, Plaintiff's former second-line supervisor up until 2016 testified that he, based on Plaintiff's performance during the time he supervised Plaintiff, could not see how he would have been able to justify or signed off on the Corrective Action Plan Sheeler

placed Plaintiff on. Plaintiff's Second-line supervisor who did sign off on Sheeler's Corrective Action Plan for Plaintiff did not personally observe Plaintiff engage in misconduct or display poor performance.

Multiple witnesses testified that Sheeler was not around the office often, it would have been hard to monitor his sergeant's behavior if he wasn't around often and the other three (3) white sergeants who also had the same or similar alleged performance issues as Plaintiff and reported to Lt. Sheeler in Troop A were not disciplined or treated in the manner which Plaintiff was.

## I.   CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's renewed motion for judgement as a matter of law on Plaintiff's race discrimination claim. If the Court does not do so, the court should enter an Order amending the Judgement and entering a Judgement in favor of Plaintiff as to the claim made against Defendant or in the Alternative enter an Order granting Plaintiff's motion for a new trial.

Respectfully submitted,

**PLAINTIFF SIEGFRIED LEWIS**

Mungo & Mungo at Law, PLLC
31700 Telegraph Rd., Suite 250
Bingham Farms, Michigan 48025
Telephone: (248) 792-7557
Facsimile: (248) 792-7303
caseaction@mungoatlaw.com

Leonard Mungo

Mich. Bar No. 43562
Admitted *Pro Hac Vice*
mungol16@msn.com

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Ste 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040


Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com