IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SIEGFRIED LEWIS**                                                                 **PLAINTIFF**

vs.                                      Case No. 4:18-cv-510-WMW

**ARKANSAS STATE POLICE**                                            **DEFENDANTS**

**PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR JUDGEMENT AS MATTER OF LAW AND MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, FOR AMENDMENT OF THE JUDGEMENT PURSUANT TO FED. R. CIV. P. 50(B)**

The Eighth Circuit allows parties moving for a Renewed Judgement as a matter of law pursuant to rule 50(b) to raise issues preserved by that party in a Rule 50(a) motion made prior to the close of trial, "By definition, a Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion." *Id., citing* Fed.R.Civ.P. 50(b); *see also Conseco Fin. Servicing Corp. v. N. Am. Mortgage, Co.,* 381 F.3d 811, 821 (8th Cir.2004) ("The grounds for the renewed motion under Rule 50(b) are limited to those asserted in the earlier Rule 50(a) motion."). *Hinz v. Neuroscience, Inc., 538 F.3d 979, 983–84 (8th Cir. 2008).* Plaintiff would start by bringing to the Court's attention that the transcript used by Defendants as an exhibit in support of its brief contains the Court's decision on Plaintiff's Rule 50(a) motion prior to the close of Defendant's case in chief. (ECF Doc. No. 184-1). Plaintiff was able to further establish its case and prove that Defendant's business decision was mere pretext after challenging Defendant's witnesses and evidence.

The Eighth Circuit has laid out examples of ways a Plaintiff may show pretext, "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision .*Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 854 (8th Cir. 2012). Plaintiff through evidence introduced at trial used each of the avenues described above to show pretext.

Defendants failed to follow their own policies and practices. Captain Finger, Plaintiff's previous second-line supervisor testified that it was not appropriate for a supervisory officer to rate or discipline a subordinate officer based on previous performance issues. Sheeler did not abide by the practice, as he admittedly considered previous instances in which Plaintiff was alleged to have performance issues in making the decision to reassign Plaintiff. Sheeler also admitted that he deviated from Arkansas State Police policy when he "overrated" Plaintiff on his 2016-2017 performance evaluation as ASP policy requires the evaluations to be accurate[1].

Sheeler treated Don Johnson a similarly situated white coworker differently than Plaintiff. Don Johnson and Plaintiff were both Sergeants and both reported to Sheeler as their direct supervisor. In Defendant's Exhibit 1, to its response brief the transcript from this Court's ruling on Plaintiff's Rule50(a) motion the Court addresses the seriousness of Plaintiff's conduct however at trial, evidence was put into the record that Sheeler felt that Johnson and Plaintiff's performance issues were of equal concern. Sheeler alleged that his reason for reassigning Plaintiff was because Plaintiff's issues persisted for a longer

---

[1] Sheeler when asked by a Juror if inaccurately conducting a performance evaluation was considered filing a false report, he responded, "yes."

period of time. Sheeler's trial testimony and Plaintiff's exhibit number 17, Don Johnson's memo from Sheeler contradicted any such assertion. Sheeler's testimony establishes Johnson's performance issues started in 2015 and that three years later in October of 2018, Johnson was put on a performance Corrective Action Plan. Sheeler testified that Plaintiff's performance issues started in 2014 and was that Plaintiff placed on a Corrective Action Plan in June of 2017. Sheeler further testified that he treated Don Johnson differently than Plaintiff.

Lastly, Defendants shifted its explanation for its employment decision. On Plaintiff's 2016-2017 performance evaluation conducted by Sheeler in April of 2017, Plaintiff's overall grade was "Above Average." Sheeler testified at trial that he overrated Plaintiff on his 2016-2017 performance evaluation and that same constituted filing a false report. This is after acknowledging that Arkansas State Police policy required performance evaluation ratings to be accurate and impartial. To any extent this Court relied on Darran Austin's performance evaluations of Plaintiff, Austin testified that Plaintiff's high scores were reflected in the fact that Plaintiff overcame any issues Austin may have perceived that Plaintiff had.[2] Austin further testified that he performed his evaluations accurately and impartially in accordance with Arkansas State Police policy. Sheeler further attempted to make an argument that he transferred Plaintiff to "do him a favor" because the new position was less demanding and because Plaintiff was about to retire. To the extent this Court relied on Hagar's testimony as to Plaintiff's performance, it is important to note that Hagar testified that he relied entirely on what Sheeler relayed

---

[2] Darran Austin performed Plaintiff's Performance evaluations for the periods of 2014-2015 and 2015-2016 and provided Plaintiff with overall ratings of "Exceeds Standards" on both evaluations. The highest rating a Sergeant could get.

to him when it came to Plaintiff's performance.

There will be a miscarriage of justice if the verdict remains as entered on 10/9/2024, as it went against the weight of the evidence. *White v. Pence*, 961 F.2d 776, 780-81 (8th Cir. 1992). The Court has acknowledged the difficulty in proving indirect evidence cases in so much so it created a method for Plaintiff to prove its cases through inferences, "In recognition of the fact that explicit, inculpatory evidence of discriminatory intent is rare, see *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1108 (8th Cir.) (" '[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes' ") (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)), *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994), the Supreme Court has established an alternative method of proof by which an inference of intentional discrimination can be raised. This inferential method of proof, which involves an elaborate set of shifting burdens of production, was originally set forth in *McDonnell Douglas* and then refined in *Burdine.* (It is well settled that this analysis, although developed in the context of Title VII, applies with equal force to claims under the ADEA. *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994); *Holley,* 771 F.2d at 1164.)

Plaintiff relied on the law and this legal standard in presenting its case to the jury in establishing pretext. Jury Instruction No. 7 which is supposed to define "pretext" reads: "***You may find that the Plaintiff's race was a motivating factor in the Defendant's decision if it has been proved that the Defendant's stated reasons for its decision are not the real reason but are a pretext to hide race discrimination***." Because Plaintiff showed Defendant's business reason was pretext and Defendant did not

overcome this, there will be a miscarriage of justice.

## I.   CONCLUSION

Plaintiff's performance evaluations for the periods 2014-2015 and 2015-2016 were "Exceeds Standards." Plaintiff's performance evaluation for the period of 2016-2017 was "Above Average." No reasonable jury could find that Plaintiff's job performance for the preceding years up to 2017 would justify putting Plaintiff being put on a Corrective Action Plan. The maximum amount of time a jury could find Plaintiff had performance issues that would justify Plaintiff being placed on a Corrective Action Plan which is far less time than Plaintiff's similarly situated white coworker had his performance issues. For the reasons stated above, the Court should grant Plaintiff's renewed motion for judgement as a matter of law on Plaintiff's race discrimination claim If the Court does not do so, the court should enter an Order amending the Judgement and entering a Judgement in favor of Plaintiff as to the claim made against Defendant or in the Alternative enter an Order granting Plaintiff's motion for a new trial.

Respectfully submitted,

**PLAINTIFF SIEGFRIED LEWIS**

Mungo & Mungo at Law, PLLC
31700 Telegraph Rd., Suite 250
Bingham Farms, Michigan 48025
Telephone: (248) 792-7557
Facsimile: (248) 792-7303
caseaction@mungoatlaw.com

Leonard Mungo
Mich. Bar No. 43562
Admitted *Pro Hac Vice*

mungol16@msn.com

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Ste 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040


Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com